IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

MARSHAL T. KENNEDY,          )
                                         )
          Plaintiff,            )    TC-MD 111263C
                                         )
      v.                    )
                                         )
DEPARTMENT OF REVENUE,     )
State of Oregon,              )
                                         )
          Defendant.        )    **DECISION**

Plaintiff appeals from a Notice of Deficiency Assessment issued by Defendant on September 26, 2011, concerning additional taxes and penalties Defendant imposed on Plaintiff for the tax year ending December 31, 2008.[1]

Trial in the matter was held in the courtroom of the Oregon Tax Court on August 14, 2012. The question presented by the appeal is whether Plaintiff is entitled to claim an alimony deduction for a lump sum payment Plaintiff made in 2008 to a former spouse whom Plaintiff divorced that year. Plaintiff was represented at trial by Kevin O'Connell (O'Connell), attorney at law, and Katherine de la Forest, attorney at law, Hagen O'Connell LLP. Defendant was represented by Kyle Quiring (Quiring), auditor, Oregon Department of Revenue.

## I. STATEMENT OF FACTS

The following facts are not in dispute:

A.    *Plaintiff's Marriage and Subsequent Dissolution*

Plaintiff married Mary Jo Ashton (Ashton) on or about May 22, 2005, in Lane County, Oregon. (Am Compl at 2; Stip Facts, Ex 4 at 4.) Plaintiff was previously married to

/ / /

---

[1] Defendant's conference decision letter, dated September 28, 2011, served as Defendant's assessment.

an Annalee Kennedy (Kennedy), to whom he paid monthly spousal support payments totaling $22,200 in 2008. (Am Compl at 2; Stip Facts at 2, ¶ 3.)

On March 1, 2008, Plaintiff and Ashton separated and began living apart, and remained apart thereafter. (Stip Facts at 2, ¶ 5.)

The parties prepared a Stipulated General Judgment of Dissolution of Marriage and Money Award (Stipulated General Judgment) providing for a single lump sum spousal support award of $52,500 to be paid by Plaintiff to Ashton by September 30, 2008. (Stip Facts at 2, ¶ 6; Stip Facts, Ex 4 at 1, 5.) While that document is signed by both Plaintiff and Ashton, it is not notarized or dated.[2] (Stip Facts at Ex 4.) Plaintiff paid Ashton $52,500 on September 23, 2008. (Stip Facts at 2, ¶ 6; Stip Facts at Ex 4-5.)

A dissolution of marriage proceeding was filed in Multnomah County, Oregon, in October 2008. (Stip Facts at 2, ¶ 5.) The Stipulated General Judgment was signed by a Multnomah County Circuit Court Judge on November 14, 2008, and entered into that court's register on December 1, 2008. (Stip Facts, Ex 6 at 1, 6.) A Notice of Entry of Judgment dated December 3, 2008, was issued to the parties by the Multnomah County Circuit Court. (*Id*. at 7.) That judgment reflects Plaintiff's obligation to pay spousal support to Ashton in the amount of $52,500 by September 30, 2008. (*Id*. at 1, 5.)

B.    *Income Tax Returns*

Ashton reported the $52,500 payment as "Alimony received" on line 11 of her 2008 federal income tax return, Form 1040. (Stip Facts at 2, ¶ 7; Stip Facts, Ex 7 at 7.) That income flowed through to her 2008 Oregon return.

___

[2] That is contrasted with the parties' (Plaintiff and Ashton) 2005 Premarital Agreement and their 2008 Amendment to Prenuptial Agreement, both of which are signed and dated by Plaintiff and Ashton, as well as by a notary. (Stip'd Exs 2, 3.) Additionally, the court notes that the caption to the "Stipulated General Judgment of Dissolution of Marriage [without Children]; and Money Award" reportedly prepared by the parties and submitted as stipulated Exhibit 4 identifies Mary Jo Ashton as a co-petitioner, but Plaintiff is not identified as the other co-petitioner; rather, the line on the preprinted form of judgment where Plaintiff's name would appear is left blank.

Plaintiff timely filed his Oregon income tax return for 2008 reflecting adjusted gross income of $253,098, which included a deduction on the federal return for alimony paid in the amount of $74,700. (Stip Facts at 1, ¶ 2.) The $74,700 alimony Plaintiff reported consists of an alimony deduction of $22,200 for support Plaintiff paid Kennedy, and the $52,500 Plaintiff paid Ashton. (*Id*. at 1-2, ¶ 3.)

C.    *Department of Revenue's Audit*

Defendant issued a Notice of Deficiency on September 29, 2010, denying Plaintiff's entire $74,700 alimony deduction. (Stip Facts at 1, ¶ 3.) Plaintiff challenged the deficiency and Defendant issued a conference decision letter on September 26, 2011, allowing Plaintiff an alimony deduction in the amount of $22,200 for payments made to Kennedy, but denying the $52,500 deduction for the payment made to Ashton. (Stip Fact at 1, ¶ 3; Am Compl at Ex A.) Plaintiff timely appealed to this court.

The Internal Revenue Service (IRS) also requested corroboration for the $74,700 alimony deduction Plaintiff claimed on his 2008 federal return. (Stip Facts at 3, ¶ 8.) Thereafter the IRS issued a "no change" letter, presumably allowing the entire $74,700 deduction. (*Id*.)

D.    *Premarital Agreements*

On or about May 9, 2005, just prior to the marriage, Plaintiff and Ashton entered into a Premarital Agreement. (Stip Facts at 2, ¶ 4; Stip Facts, Ex 2 at 1, 10.) The May 2005 Premarital Agreement provided that, in the event of death or a dissolution, separation, or annulment of the parties' marriage, Plaintiff and Ashton would each receive all of their separate property owned prior to the marriage, and neither party would be entitled to an award of spousal support. (Stip Facts, Ex 2 at 1, 2, 6, 7.)

That agreement further provided that, in the event Plaintiff predeceased Ashton, his estate would pay her a specified sum of money in decreasing annual increments of $5000, ranging from

$50,000 if they were married one year or less, to $30,000 if the marriage lasted at least five years. (*Id*. at 7.) The Premarital Agreement also provided that suspicion of infidelity would subject the spouse so suspected to a polygraph test and, if found guilty of infidelity, the guilty spouse would pay the other a specified amount of money in the event of a divorce; Plaintiff was to pay $75,000 and Ashton $30,000. (*Id*. at 8.)

On or about September 8, 2008, the parties entered into an Amendment to Prenuptial Agreement (Prenup Amendment). The September 2008 Prenup Amendment provided in relevant part that "Terry Kennedy will give Mary Jo Ashton 52,500 dollars in September of 2008[,]" and further provided that "[t]he April 15, 2008 prenup amendment is null and void." (Stip Facts at 2, ¶ 5; Stip Facts at Ex 3.)[3]

## II. ANALYSIS

Internal Revenue Code (IRC) section 215 provides a deduction to an individual for alimony or separate maintenance payments paid by the individual during the taxable year. IRC § 215(a).[4] Subsection (b) of IRC section 215 provides that IRC section 71(b) is to be used in defining the term "alimony or separate maintenance payment," and requires that the payment a taxpayer seeks to deduct be "includible in the gross income of the recipient under section 71."[5]

IRC section 71(b)(1) provides in relevant part that:

"[t]he term 'alimony or separate maintenance payment' means any payment in cash if –

"(A) such payment is made by (or on behalf of) a spouse under a divorce or separation instrument,

---

[3] The court notes the parties did not provide to the court a copy of the "April 15, 2008 prenup amendment" referenced in the September 8, 2008, Prenup Amendment.

[4] The court's references the various sections of the IRC are to the Internal Revenue Code of 1986, as subsequently amended and in effect for 2008.

[5] IRC section 215(b) reads: "[f]or purposes of this section, the term 'alimony or separate maintenance payment' means any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

"(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

"(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

"(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."

Plaintiff argues in his Trial Brief that IRC section 215 provides for the alimony deduction and that "[a]ll of the requirements of Internal Revenue Code §71 are met." (Ptf's Trl Br at 2-3.) During his opening statement at trial, O'Connell stated that (1) the disputed payment was made in cash, (2) the payment was received by Ashton under a divorce or separation instrument, (3) the instrument did not contain a provision precluding Plaintiff from deducting the payment, (4) the payment was claimed by Ashton as income from alimony and deducted by Plaintiff as an alimony payment, (5) Plaintiff and Ashton were not members of the same household at the time the payment was made, and (6) the Prenup Agreement did not create a liability to make the payment after the death of Plaintiff. The requirement in IRC section 71(b)(1)(D) that there be no liability to make any payment for any period after the death of the payee spouse seems to have been one of, if not the primary, reason Defendant denied the payment in the September 26, 2011, conference letter that served as Defendant's assessment.[6] (Stip Facts, Ex 1 at 2.)

/ / /

---

[6] Defendant's conference decision letter states in relevant part that:

"The money paid to your second wife, however, is not deductible as alimony, even though it was labeled as spousal support by the dissolution judgment. When congress amended the IRC as it affects alimony in the Deficit Reduction Act of 1984, the requirement that the obligation to make payments must terminate immediately upon the death of the recipient was central to the distinction between support and property settlements. *Fuller* at 845-846." (Stip Facts, Ex 1 at 2.)

Defendant's representative Quiring responded during trial that his primary concern was that the September 8, 2008, Prenup Amendment simply states that Plaintiff "will give Mary Jo Ashton 52,500 dollars in September of 2008[.]" (*See* Stip Facts, Ex 3 at 1.) Quiring stated the document does not identify the payment as alimony or spousal support; he therefore questions whether the payment was indeed intended as spousal support or was instead a property settlement or payment of some other sort. Plaintiff replied that the Multnomah County Circuit Court Stipulated General Judgment references the Prenup Amendment and identifies the payment as spousal support.

Defendant's second concern is the timing of the payment. At trial, Quiring noted that IRC section 71(b)(1)(A) requires that the payment be made "under a divorce or separation instrument[;]" the payment in this case was made on or about September 23, 2008, whereas the Stipulated General Judgment was signed by the judge on November 14, 2008. As a result, Plaintiff made the payment to Ashton before the divorce instrument was legally operative. In support of Defendant's position, Quiring cited three decisions issued by the United States Tax Court and one Order issued by the United States District Court for the Eastern District of New York. Plaintiff asserts all four cases are distinguishable. (Ptf's Post-Trl Br at 1-2.)

Plaintiff argues that the relevant code provisions require that the payment be made "under a divorce or separation instrument[.]" IRC § 71(b)(1)(A) (providing that "alimony or separate maintenance payment means any payment in cash if * * * such payment is made by (or on behalf of) a spouse under a divorce or separation instrument"); (*see* Ptf's Trl Br.). Plaintiff insists the payment here at issue was so made. (Ptf's Trl Br at 3.) In support of this position, Plaintiff notes that (1) Plaintiff paid Ashton the money in September 2008, (2) both parties treated the payment as alimony or spousal support on their respective 2008 federal and state income tax returns, (3) the Prenup Amendment executed in September 2008 specifies Plaintiff

will give Ashton $52,500, and (4) the subsequent circuit court judgment of dissolution requires Plaintiff to pay Ashton $52,500 by September 30, 2008, and identifies the payment has "Spousal Support." (*Id.* at1-2 ¶ 2, 5.)

The court has reviewed the facts of this case and the arguments of the parties. Defendant cited *Healey v. Comm'r* (*Healey*), 54 TC 1702 (1970), in support of its assertion that the payment in this case does not qualify as a deductible payment of spousal support or alimony because of the timing. Counsel for Plaintiff responded that the text of IRC section 71 was "significantly different" at the time *Healey* was decided from that same section in 2008. (Ptf's Post-Trl Br at 1.) The court disagrees. The taxpayer in *Healey* claimed as spousal support $5591 paid to his wife in 1966; taxpayer and his wife were separated pursuant to a restraining order in February 1966. *Healey*, 54 TC at 1703. Healey asserted that the restraining order, coupled with Colorado law, required him to support his wife and children post-separation and acted as a decree of separate maintenance as defined in IRC section 71. *Id.* at 1705. The court rejected that argument, noting that taxpayer's reliance on only one portion of the statute ignored other text in IRC section 71 which the court described as "highly pertinent." *Id.* at 1705-06. That highly pertinent text was the requirement in section 71 that the payment be made "under a decree of divorce or of separate maintenance[.]" *Id.*

At the time of the *Healey* decision, IRC section 71 used the text "*decree* of divorce or separate maintenance," whereas the IRC in effect in 2008 used the text "divorce or separation *instrument*." (Emphasis added.) The *Healey* court reasoned that the taxpayer could not prevail because "the obligations to make the payments in question [were not] imposed by the decree itself." *Healey*, 54 TC 1706. That same reasoning applies in this case. Under the current IRC section 71, the intention of the parties is insignificant; however, it matters that the payment be made under a legal obligation created by a divorce or separation instrument. Plaintiff's attempt

to couple the September 2008 Prenup Amendment with the November 2008 Stipulated General Judgment is unpersuasive and ignores the relevant language in IRC section 71. The Prenup Amendment does not characterize the $52,500 payment as either spousal support or property settlement (or something else), but instead simply provides that Plaintiff shall pay Ashton that amount of money in September of 2008. Although the Stipulated General Judgment characterizes the payment as spousal support, it was not operative until sometime after Plaintiff paid the $52,500; thus the instrument requiring payment was not in effect and Plaintiff was under no legal obligation to make the payment until so ordered by the court.

Finally, as a practical matter, it is difficult to see how the Prenup Amendment could serve as the basis for the argument that the payment was deductible spousal support, given that the Prenup Amendment contemplates the continuation of the marriage between Plaintiff and Ashton. For example, provision #8 required that the parties be faithful to one another, and provision #10 provided that "[i]f the marriage fails despite these changes in the prenuptial agreement, Mary Jo Ashton will leave the marriage without a divorce settlement."

### III. CONCLUSION

After carefully reviewing the facts and applicable law, the court concludes that Plaintiff is not entitled to deduct as alimony or spousal support on his 2008 Oregon income tax return the $52,500 paid to Ashton in September 2008 and that Defendant's assessment is upheld. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and Defendant's assessment is upheld.

Dated this ___ day of October 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on October 18, 2012. The Court filed and entered this Decision on October 18, 2012.*